UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA        :

     -v-        :        **SEALED INDICTMENT**

AMIR BRUNO ELMAANI,        :        20 Cr. ___

    a/k/a "Bruno Block,"        .:        20 CRIM 661

       Defendant.        :

- - - - - - - - - - - - - - - -x

## COUNT ONE
(Tax Evasion – 2017 Tax Year)

The Grand Jury charges:

### Overview of the Criminal Conduct

1.   Pursuant to the Internal Revenue Code and
attendant regulations, individual U.S. citizens and residents
are generally required to report accurately their income, tax
obligations, and, where appropriate, any claim for a refund
annually on a United States Individual Income Tax Return, Form
1040 ("Form 1040"), which must be filed with the Internal
Revenue Service ("IRS").

2.   As described in more detail below, from in or
about 2017 to in or about 2018, AMIR BRUNO ELMAANI, a/k/a "Bruno
Block," the defendant, earned millions of dollars in income,
including from his creation of a new cryptocurrency called
"Pearl" tokens.  Among other things, in or about October 2018,

although the number of Pearl tokens was purportedly fixed, ELMAANI minted and took for his personal use millions of new Pearl tokens. ELMAANI converted his Pearl tokens to other cryptocurrency and U.S. dollars, which he used for his personal benefit. ELMAANI filed a Form 1040 for 2017, but he failed to report a substantial portion of his income, including income from the sale of Pearl tokens. ELMAANI did not file a Form 1040 for 2018 despite earning substantial income, including income from the sale of Pearl tokens, and took affirmative acts to evade tax on that income.

### Background on Cryptocurrency

3.    Cryptocurrency: Cryptocurrency is a decentralized, peer-to-peer form of electronic currency. Cryptocurrency is a digital representation of value that can be digitally traded and functions as (1) a medium of exchange; (2) a unit of account; and/or (3) a store of value, but does not have legal tender status. Unlike "fiat currency," like the U.S. dollar and the Euro, cryptocurrency is not issued by any jurisdiction and functions only by agreement within the community of users of that particular currency.

4.    Cryptocurrencies, such as Ether and Bitcoin, are held by their owners in electronic "wallets." These wallets have unique addresses, which are designated by a string of

2

letters and numbers.  Only an individual who possesses the
unique "private key" associated with a wallet's address can
access the cryptocurrency in that wallet.  However, any
individual can send cryptocurrency to any wallet.  An individual
does not have to submit any identifying information to any
central authority to own a wallet, and it is therefore very easy
to hold a wallet anonymously.  Some types of cryptocurrency,
such as Bitcoin and Ether, are commonly called "coins," while
others, such as Pearl, discussed herein, are commonly referred
to as "tokens."

　　　　5.　__Initial coin offerings__: Initial coin offerings,
or "ICOs," are a type of fundraising event in which an entity
offers participants a unique digital coin or token in exchange
for consideration.  They may also be referred to as
"crowdsales."  ICOs are typically announced and promoted through
the Internet and e-mail.  In order to participate in an ICO,
investors are generally required to transfer funds to the
issuer.  After the completion of an ICO, the issuer will
distribute its unique coin or token to the participants.  The
tokens may entitle the holders to certain rights related to a
venture underlying the ICO, such as the right to profits, shares
of assets, rights to use certain services provided by the
issuer, and/or voting rights.  These tokens may also be listed

3

on online platforms, typically called virtual currency

exchanges, and be tradeable for other virtual currencies or fiat

currencies.

6.    Blockchain:  A blockchain is a public,

distributed electronic ledger.  Whenever someone transfers

cryptocurrency between wallet addresses, it is recorded on a

blockchain.  The blockchain only records the movement of

cryptocurrency between the addresses; it does not by itself

identify the holders of the cryptocurrency.  There are different

types of blockchain networks.  The blockchain network primarily

discussed in this Indictment is the Ethereum blockchain network.

7.    Ethereum Blockchain: The Ethereum blockchain

network consists of users, or "nodes," who each download

software that permits the user's computer to participate in the

Ethereum network.  Each node can participate in the network to a

different degree; some nodes store only certain information

about the blockchain, while others store the entire blockchain.

The nodes are used to confirm transactions and enforce the rules

of the blockchain to ensure that transactions are processed

correctly.

8.    Smart contracts:  Blockchains can also support

"smart contracts."  On the Ethereum blockchain, a smart contract

is given its own address on the network.  A smart contract is a

4

public, open-source program on the blockchain. Its "creator,"
that is, the person who writes the smart contract's code and
places it on the blockchain, can retain ownership, or
"directorship," of the smart contract, or can transfer it to
someone else. Whoever has directorship over the smart contract
has the exclusive ability to send the smart contract certain
commands, which the smart contract then executes. The commands
could include, for example, transferring cryptocurrency.

### Relevant Entities and Individuals

9.   At all times relevant to this Indictment, AMIR
BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, was a citizen
of the United States.

10.   At all times relevant to this Indictment, the
Oyster Protocol project ("Oyster Protocol") was founded by AMIR
BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, to create and
sell a new cryptocurrency called Pearl tokens. Oyster Protocol
Inc. was a company registered in approximately May 2018 as a
Delaware corporation. ELMAANI owned Oyster Protocol Inc.
anonymously through a holding company.

11.   A foreign-based virtual currency exchange (the
"Foreign-based Exchange") was one of the chief secondary markets
on which Pearl tokens could be exchanged for other
cryptocurrencies. On the Foreign-based Exchange, it was

5

possible to exchange Pearl tokens for Ether and Bitcoin, but not
directly for U.S. dollars or any other fiat currency.

12.  At all times relevant to this Indictment, a U.S.-
based virtual currency exchange (the "U.S.-based Exchange")
allowed users to, among other things, exchange certain
cryptocurrencies, including Ether and Bitcoin (but not Pearl
tokens), for U.S. dollars, which could then be withdrawn to
users' bank accounts.

13.  At all times relevant to this Indictment, AMIR
BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, was married
to an individual ("Individual-1") who was a citizen of the
United States.

14.  At all times relevant to this Indictment, an
individual living with a family member of Individual-1
("Individual-2") was a citizen of the United States.

15.  At all times relevant to this Indictment, two
associated precious metals dealers (the "Precious Metals
Dealers") operated from the same physical location in New York,
New York and operated a website.

## ELMAANI Earns Income Through a New Cryptocurrency He Created Using a Pseudonym

16.  In or about September and October 2017, AMIR
BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, began

6

promoting online his new cryptocurrency known as Pearl tokens. Using a variation of the online pseudonym "Bruno Block," ELMAANI stated that he planned to develop a data-storage platform, known as Oyster Protocol, which would allow users to purchase online data storage with his new Pearl tokens.

17.   During the course of the Oyster Protocol project described below, AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, instead of using his real name, operated almost exclusively online under the pseudonym "Bruno Block." ELMAANI concealed his true identity from his prospective employees and business associates and never met them in person.

18.   From approximately in or about October to in or about December 2017, AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, sold Pearl tokens to the public in an ICO. ELMAANI used a smart contract on the Ethereum blockchain to create and sell Pearl tokens (the "Pearl Smart Contract"). ELMAANI sold an initial allotment of Pearl tokens to the public during the ICO and announced that he intended to retain a substantial amount of additional Pearl tokens.

19.   In or about December 2017, AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, offered and successfully sold to the public on a secondary market platform millions of

7

Pearl tokens from the supply he had retained, thereby exchanging
Pearl tokens for other cryptocurrency that he controlled.

20.   In or about December 2017 and January 2018, AMIR
BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, discussed
employment and compensation with certain individuals who had
been assisting with the Oyster Protocol project.  In one online
message in or about December 2017, ELMAANI displayed an
awareness that receiving payment in cryptocurrency would have
tax consequences for one of his potential employees.  ELMAANI
stated: "[The employee] is looking into the implications of
getting paid in E[ther] (legal, taxes etc.)."  ELMAANI further
stated that he intended to take a "founder's share" amounting to
millions Pearl tokens, in addition to a certain amount of
additional proceeds of the Oyster Protocol project in other
cryptocurrencies, for his own personal use.

21.   AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the
defendant, sold Pearl tokens he controlled in exchange for other
cryptocurrencies at various times.

## ELMAANI Owns Assets Through Anonymous Entities to Conceal His Connection to the Assets and Avoid Taxes

22.   In or about March 2018, AMIR BRUNO ELMAANI, a/k/a
"Bruno Block," the defendant, created a holding company, not
associated with his true name, which he then used to anonymously

own and obtain income from the Oyster Protocol project and
Oyster Protocol Inc.

23.   Specifically, on or about June 7, 2018, AMIR
BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, transferred
some cryptocurrency to a wallet address controlled by two other
individuals associated with Oyster Protocol Inc., and kept other
Pearl tokens and cryptocurrency for himself, in connection with
a transfer of assets between Oyster Protocol Inc. and the
anonymous holding company.  In a statement issued under
ELMAANI's online pseudonym on or about June 7, 2018, ELMAANI
stated that he was retaining millions of Pearl tokens as his
"ownership stake" in Oyster Protocol, but that he had to move
the tokens to a different wallet "in order to avoid being
double-taxed."

### ELMAANI Earns More Income From His Cryptocurrency Through an Exit Scheme

24.   On or about October 29, 2018, AMIR BRUNO ELMAANI,
a/k/a "Bruno Block," the defendant, used his access to the Pearl
Smart Contract, first, to set the Pearl Smart Contract to
provide new Pearl tokens, which would be sold at the below-
market ICO price, and, second, to take millions of additional
Pearl tokens for himself for free (the "October 2018 Exit

9

Scheme"). In so doing, he increased the total volume of Pearl tokens.

25. Beginning later in the day on or about October 29, 2018, AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, also withdrew for himself from the Pearl Smart Contract Ether coins that others, who had noticed the Pearl Smart Contract had been opened at the below-market price, had sent to the contract to obtain Pearl tokens. By doing this, ELMAANI took additional cryptocurrency for his personal use.

26. The public Ethereum blockchain shows that AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, sent millions of his newly minted Pearl tokens to the Foreign-based Exchange, to be exchanged for other types of cryptocurrency. A tracing of records on the relevant blockchains shows that ELMAANI used "tumblers"[1] to conceal the destination of the other types of cryptocurrencies ELMAANI subsequently withdrew from the Foreign-based Exchange.

27. On or about October 29, 2018, the Foreign-based Exchange halted trading of Pearl tokens at the request of Oyster Protocol Inc. employees. The price of Pearl tokens had dropped

---

[1] "Tumblers" are cryptocurrency services that combine cryptocurrency transactions among multiple customers and mix the cryptocurrency so that it is difficult to trace to its source or destination on the blockchain.

substantially.  The Foreign-based Exchange delisted Pearl tokens on or about November 15, 2018.  As a result of AMIR BRUNO ELMAANI's, a/k/a "Bruno Block," the defendant's, conduct, Pearl tokens held by investors lost substantial value.

28.  After initially attempting to conceal his conduct, on or about October 31, 2018, AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, using his pseudonym in online messages, effectively admitted to re-opening the Pearl Smart Contract and taking the Pearl tokens for himself.

29.  On or about October 31, 2018, AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, had a phone conversation with the then-chief executive officer ("CEO") of Oyster Protocol Inc.  The CEO asked ELMAANI, in substance and in part, why ELMAANI had to take the additional new Pearl tokens if he had already cashed out millions of dollars' worth of Pearl tokens in the past.  ELMAANI responded, in part, that "taxes are pretty nasty."

30.  AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, carried out the October 2018 Exit Scheme days before the Foreign-based Exchange was set to implement, in November 2018, "know your customer" ("KYC") policies that would have required ELMAANI to provide personal identifying information in order to engage in substantial transactions.  In an online

11

message in or about June 2018, ELMAANI had expressed his

concerns with KYC policies at the Foreign-based Exchange and his

desire to hide his assets and his true name: "I will be

gradually obfuscating my [Pearl tokens] by using [the Foreign-

based Exchange] as a mixer due to increasing KYC restrictions.

Past Nov 1 I will be forced to hand over ID to exchanges so the

[Pearl] needs to be obfuscated by then.  This does not mean I am

selling on [the Foreign-based Exchange], I'm obfuscating the

tokens gradually using a mixer."

### ELMAANI's Use of Nominees

31.  On or about October 30, 2018, the day after AMIR

BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, minted the

new Pearl tokens, Individual-1, ELMAANI's spouse, received in

her account at the U.S.-based Exchange a total of approximately

49.5 Ether coins (worth approximately $10,000 at the time) in

two transactions.  Individual-1 did not file a tax return or

report any income to the IRS in 2018 and has no known source of

employment.

32.  Individual-1 then transferred 49.5 Ether coins,

in two transactions divided differently than how she had

received the coins, to an account at the U.S.-based Exchange.

Individual-2's account at the U.S.-based Exchange subsequently

12

received the 49.5 Ether in the same denominations as sent by
Individual-1.

33.    Shortly thereafter, on or about November 2, 2018,
Individual-2 received an additional 10.2 Bitcoin (worth
approximately $65,000 at the time) in his U.S.-based Exchange
account. ·Between on or about November 2 and 5, 2018,
Individual-2 withdrew approximately $92,000 from his U.S.-based
Exchange account and transferred it to his bank account.  On or
about November 6, 2018, Individual-2 transferred approximately
$100,000 from his bank account to a bank account owned by AMIR
BRUNO ELMAANI, a/k/a "Bruno Block," the defendant.

### ELMAANI's Receipt of Income in 2017

34.    While AMIR BRUNO ELMAANI, a/k/a "Bruno Block,"
the defendant, took various steps to conceal his sale of Pearl
tokens and receipt of income from cryptocurrency transactions,
the flow of funds into and from his U.S.-based Exchange account
and other income sources to various bank accounts held in
ELMAANI's name can be traced.

35.    AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the
defendant, sent approximately $800 in fiat currency to the U.S.-
based Exchange in 2017 and no funds to any other known
cryptocurrency exchange that year.  Deposits from the U.S.-based
Exchange into ELMAANI's various financial accounts in 2017

13

totaled over $94,000.  These transactions occurred through the U.S.-based Exchange's bank, located in New York, New York.

### ELMAANI's Receipt of Income in 2018

36.  In or about February 2019, the U.S.-based Exchange issued AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, an IRS form for 2018 showing his receipt of approximately $12.5 million in cryptocurrency proceeds.[2]  ELMAANI was physically present in Westchester County, New York, on various occasions when he engaged in certain cryptocurrency transactions that produced those proceeds.

37.  Based on an analysis of his financial records, in 2018, AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, sent no fiat currency to the U.S.-based Exchange nor to any other known cryptocurrency exchange.  Despite ELMAANI not depositing substantial fiat currency with any known cryptocurrency exchanges in 2017 or 2018, and his not reporting substantial income in any prior tax year that could have supported the purchase of substantial amounts of cryptocurrency, ELMAANI received substantial funds into his bank accounts from the U.S.-based Exchange.

---

[2] By the time the form was issued in February 2019, ELMAANI no longer had control over the Oyster Protocol Inc.-controlled e-mail account to which the form was emailed.

14

38.   In 2018, AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, received millions of dollars into bank accounts he controlled from the U.S.-based Exchange and other sources. To conceal his identity, ELMAANI passed some of these transfers through Individual-1 and Individual-2.  These transactions occurred through the U.S.-based Exchange's bank, located in New York, New York.

39.   AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, received more than $590,000 in proceeds from the Precious Metals Dealers in 2018, representing his untaxed income that he stored in precious metals.  ELMAANI was physically present in the Southern District of New York on the same day as certain of these precious metals transactions.  ELMAANI also paid a person performing services for him with a check from a gold depository and stored gold bars in a safe.  In addition, ELMAANI paid for personal expenses with large amounts of cash.

**ELMAANI'S Willful Evasion of Tax on His Income**

40.   AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, and Individual-1 jointly filed a false, self-prepared 2017 Form 1040 with the IRS in or about February 2019 (the "2017 Return").  ELMAANI had previously filed income tax returns in 2014 and 2016.  The only income reported on the 2017 Return was self-employment income of approximately $15,000, from a business

15

described as "patent design."  ELMAANI willfully omitted from
the 2017 Return additional substantial income that he received
in 2017, and he willfully failed to report any cryptocurrency
proceeds.

41.  AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the
defendant, failed to file a return at all for calendar year
2018.  Individual-1, ELMAANI's spouse, likewise did not file an
income tax return for 2018.

42.  Despite AMIR BRUNO ELMAANI, a/k/a "Bruno Block,"
the defendant, reporting minimal income to the IRS for 2017 and
reporting no income in 2018, his expenditures in 2018 included:
1) over $10 million for the purchase of yachts; 2) over $1.6
million spent at a carbon fiber composite company; 3) over
$450,000 spent at a home improvement store; and 4) over $700,000
for the purchase of two homes.

43.  In addition to receiving income from the October
2018 Exit Scheme through Individual-1 and Individual-2, as
discussed above, AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the
defendant, used those individuals as nominees to receive other
income throughout 2018.  Individual-1, ELMAANI's spouse, who
reported to the U.S.-based Exchange that she was self-employed
as a cook, first had activity in her U.S.-based Exchange account
in or about June 2018, days after ELMAANI sold his interest in

16

Oyster Protocol's intellectual property for a large amount of cryptocurrency. From in or about June to in or about November 2018, Individual-1 received hundreds of thousands of dollars' worth of cryptocurrency in her U.S.-based Exchange account, withdrew over $200,000, and sent additional cryptocurrency to other blockchain addresses.

44. Similarly, Individual-2, who reported to the U.S.-based Exchange that his source of funds was from working in customer service at an automotive business, received from on or about June 4 to on or about June 25, 2018 over $240,000 in withdrawals from the U.S.-based Exchange into his bank account. Individual-2 then, on or about June 25, 2018, transferred $150,000 to AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the defendant. From on or about June 26 to on or about July 30, 2018, Individual-2 received over $140,000 from the U.S.-based Exchange. These transactions occurred through the U.S.-based Exchange's bank, located in New York, New York. Individual-2 then transferred to ELMAANI $100,000 on or about July 31, 2018.

45. AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, also used anonymous business entities and nominees to hold his assets. In addition to ELMAANI's owning Oyster Protocol Inc. through the anonymous holding company, ELMAANI held a residence, which he purchased with untaxed income for

approximately $490,000 in or about March 2018, in the name of a

purported, generically-named limited liability company that has

never filed a tax return.  Another residence that ELMAANI

purchased in 2018 was titled in the name of Individual-2 and

Individual-2's spouse or partner, not ELMAANI.

## Statutory Allegations

46.   From in or about January 2017 through on or about

February 22, 2019, in the Southern District of New York and

elsewhere, AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the

defendant, willfully and knowingly did attempt to evade and

defeat a substantial part of the income tax due and owing by

ELMAANI to the United States of America for calendar year 2017

by various means, including, among others:  (a) filing a false

income tax return and failing to report substantial income to

the IRS for the calendar year 2017; (b) earning his unreported

income by operating a business under a pseudonym and concealing

his true identity; (c) owning assets through anonymous entities;

and (d) dealing substantially in cryptocurrency, cash, and

precious metals to conceal his unreported income, whereas, as

ELMAANI then and there well knew and believed, in the said

calendar year he had substantial taxable income, upon which

taxable income there was a substantial amount of tax due and owing to the United States of America.

(Title 26, United States Code, Section 7201.)

### COUNT TWO
(Tax Evasion – 2018 Tax Year)

The Grand Jury further charges:

47.   The allegations set forth in paragraphs 1 through 45 of this Indictment are incorporated by reference as though fully set forth herein.

48.   During the calendar year 2018, AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, received substantial taxable income, upon which there was substantial income tax due and owing to the United States of America. Knowing the foregoing facts and failing to make an income tax return on or before April 15, 2019, as required by law, to any proper officer of the Internal Revenue Service, and to pay the income tax to the Internal Revenue Service, AMIR BRUNO ELMAANI, a/k/a "Bruno Block," the defendant, from in or about January 2018 through on or about April 15, 2019, in the Southern District of New York and elsewhere, willfully and knowingly did attempt to evade and defeat a substantial part of the income tax due and owing by ELMAANI to the United States of America for calendar year 2018 by various means, including, among others:

19

Case 1:20-cr-00661-CM   Document 1   Filed 12/07/20   Page 20 of 21

(a) using nominees to receive part of his unreported income and transfer it to him; (b) earning his unreported income by operating a business under a pseudonym and concealing his true identity; (c) owning assets through anonymous entities and in others' names; (d) obtaining additional unreported income through a cryptocurrency exit scheme in October 2018, in which ELMAANI attempted to conceal his involvement; and (e) dealing substantially in cryptocurrency, cash, and precious metals to conceal his unreported income.

(Title 26, United States Code, Section 7201.)

FOREPERSON

AUDREY STRAUSS JE
Acting United States
Attorney

20

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v. -

**AMIR BRUNO ELMAANI,**
**a/k/a "Bruno Block,"**

Defendant.

### SEALED INDICTMENT

20 Cr.

(26 U.S.C. § 7201)

_____
Foreperson.

AUDREY STRAUSS
Acting United States
Attorney.